IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Anthony Lawrence Dash | ) | C/A No.: 3:10-1036-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Floyd Mayweather, Jr.; Mayweather Promotions; Mayweather Promotions, LLC; Philthy Rich Records; World Wrestling Entertainment, Inc., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Anthony Dash seeks damages for copyright infringement from a variety of defendants allegedly involved in the broadcast of a copyrighted music track in connection with two professional wrestling events. This matter is before the court on the separate motions to dismiss for lack of personal jurisdiction (ECF Nos. 22, 24) by defendants World Wrestling Entertainment, Inc. ("WWE"), and Mayweather Promotions and Mayweather Promotions, LLC (both collectively, the "Promoters"). The motions have been fully briefed and the court heard oral argument at a August 13, 2010 hearing, where the matter was taken under advisement. This order sets forth the rulings of the court and, for reasons set forth below, denies both motions.

I. Facts

On March 30, 2008, Floyd Mayweather, Jr. entered an Orlando, Florida arena hosting WrestleMania 24 to the song "Yep," a composition that Dash contends violates his copyright

in a musical track entitled "TONY GUNZ BEAT." WrestleMania 24 took place before a live audience of 75,000 and a pay-per-view and television audience of over one million. Dash represents that untold numbers of WWE enthusiasts and Mayweather fans have purchased the Wrestlemania 24 DVD, and viewed clips of Yep on YouTube.com. Dash alleges that WrestleMania 24 was advertised and broadcast in South Carolina, and purchased on pay-per-view by South Carolina residents. Dash also alleges that South Carolina consumers have purchased WrestleMania 24 DVDs at brick-and-mortar retail stores in South Carolina as well as online stores (in which case the DVDs were shipped to South Carolina).

On August 24, 2009, Mayweather guest-hosted a WWE event entitled "RAW" in Nevada, at which Yep again accompanied Mayweather's entrance to the arena. Dash alleges that RAW, and the infringing content therein, was advertised, broadcast, consumed on pay-per-view, and purchased on DVD by residents of South Carolina in South Carolina.

Dash filed suit in the United States District Court for the District of South Carolina against Mayweather; the Promoters; Philthy Rich Records; and WWE on April 26, 2010, for breach of his copyright in TONY GUNZ BEAT. The Promoters and WWE thereafter filed separate motions to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

II.  Standard of Review

Where the court "addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient

2

jurisdictional basis in order to survive the jurisdictional challenge." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). In assessing whether the plaintiff has met his burden, "the district court must draw all reasonable inferences from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56 (4th Cir. 1993). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs, 886 F.2d at 676. As the court received no evidence at the August 13, 2010 hearing, only receiving argument on the briefs and affidavits attached thereto, the court must determine if Dash has established a prima facie case—subject to being proved at trial—of personal jurisdiction as to each defendant challenging this court's jurisdiction over it.

III.  Law

A federal court may exercise person jurisdiction over a "foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." Consult. Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009); Fed. R. Civ. P. 4(k)(1)(A). Because South Carolina courts have consistently construed the South Carolina long-arm statute to extend to the outer reaches of the Fourteenth Amendment, the court's statutory inquiry mergers with its constitutional inquiry. See Cockrell v. Hillerich & Bradsby Co., 491, 611 S.E.2d 505, 508 (S.C. 2005); see also Geometric, 561 F.3d at 277.

3

The Fourteenth Amendment requires sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945). If the defendant's contacts with the forum give rise to the basis of the suit, those contacts may provide the basis to establish what is referred to as specific jurisdiction. In the specific jurisdiction context, minimum contacts means: (1) that defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) that the plaintiff's claims arise out of those activities directed at the state; and (3) that exercise of the court's jurisdiction over the defendant would be constitutionally reasonable. Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003). "If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state." Id. Establishing general jurisdiction requires that the plaintiff show that the defendant's activities in the state are "continuous and systematic." Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

In cases involving intentional torts, Calder v. Jones provides what is commonly referred to as the "effects test," and which provides guidance in assessing the "purposeful" requirement identified above. 465 U.S. 783 (1984). To establish specific personal jurisdiction over an alleged tortfeasor, Calder requires that the plaintiff show: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the

4

forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed its tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. Geometric, 561 F.3d 273 at 280. Copyright violation is a tort, and that tort occurs where the owner of the copyright suffers damage. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1570 (Fed. Cir. 1994). This usually occurs when the tortfeasor sells infringing content in the copyright holder's home state. Id. ("[T]he situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee, here the place of the infringing sales in Virginia."). In the intellectual property context, courts generally require a finding that the infringement was intentional, prior to finding personal jurisdiction. See Costar Group, Inc. v. Loopnet, Inc., 106 F. Supp. 2d 780, 785–86 (D. Md. 2000) (collecting cases).

IIV.  Discussion

    A.    The Promoters' Motion to Dismiss

The Promoters contend that Dash cannot establish sufficient contacts between the Promoters and South Carolina to sustain an exercise of specific jurisdiction over them.[1] Dash contends specific jurisdiction should obtain here based on Calder v. Jones, 465 U.S. 783. Dash also relies on Indianapolis Colts v. Metro. Baltimore Football Club Ltd. P'Ship, for the proposition that when an injury in the forum state is to intellectual property or reputation, "[t]he defendant ha[s] also 'entered' the state in some fashion." 34 F.3d 410, 412 (7th Cir.

---

[1] Dash appears to concede that he cannot establish general jurisdiction over the Promoters in his response to the Promoters' motion to dismiss.

5

1994). In Indianapolis Colts, the Seventh Circuit was faced with the situation where a Canadian football team in Baltimore was intent on using the name "Baltimore Colts," a name in which the Indianapolis Colts determined it had some interest. The only activity the Baltimore team had undertaken in Indiana was the planned broadcast of its games nationally on cable television. The Seventh Circuit determined that "[b]y choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana" and should be amenable to suit there. Id. at 412. The Colts and Calder decisions rest in large part on the idea that an injury to intellectual property in a forum state accompanied by the sale of media (in Calder a magazine, in Colts a national cable broadcast) constitutes entry into the forum sufficient to satisfy minimum contacts. A common thread running through Colt and Calder is what the Supreme Court characterized as "intentional, and allegedly tortious, actions . . . expressly aimed at [the forum state]." Calder, 465 U.S. at 789. The Supreme Court expressly differentiated the conduct at issue in Calder from "mere untargeted negligence." Id.

    1.    The Effects Test

As stated above, to establish personal jurisdiction pursuant to the effects test in the Fourth Circuit, a plaintiff must show that (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed its tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Geometric, 561 F.3d at 280. Here, the complaint alleges that Mayweather, as a principal in the Promoter companies, "directed the infringing activities at issue in this case," namely choosing to play Yep as he entered the two nationally broadcast WWE events, with knowledge of Dash's copyright. (Compl. ¶¶ 2, 25.) The Promoters' affidavit submitted in support of their motion to dismiss declares knowledge of the creation of the recording of Yep, yet fails to disclaim or deny Mayweather's alleged actions in acting on behalf of the Promoters. (Ellerbe Aff., ECF No. 23-1.) More salient, however, are the actions of Leonard Ellerbe, CEO of Mayweather Promotions and authorized representative of Mayweather Promotions, LLC, as recounted in the affidavit of Neil Lawi, Vice President of Music at WWE. Lawi indicates that Ellerbe caused Yep to be played at the Florida event and represented that Mayweather owned all rights to the song. (Lawi Aff. ¶¶ 5–6, ECF No. 24-3 at 2.) Specifically, Lawi represents that just prior to WrestleMania 24 "Mayweather's manager, Leonard Ellerbe, handed me a CD and requested that WWE play the song on that CD in connection with Mayweather's entrance. The song on the CD was a recording of 'Yep.'" (Id.)

The court begins its analysis with the finding that copyright infringement is a tort. The court also notes that Ellerbe simultaneously proclaims knowledge of the creation of Yep, while failing to disclaim knowledge of the copyrighted track allegedly contained therein. Also, while the broadcast of Wrestlemania 24 was directed at a national audience, the tortious broadcast had but a single recipient in a single location. The court finds the

allegation of knowledge of Dash's copyright (Am. Compl. ¶ 25), the Promoter's failure to challenge or otherwise disclaim such knowledge, and the Promoters' activities as sworn to in the Lawi affidavit, sufficient to establish the requisite showing of intent under Calder. See Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 215 F.3d 1320, 2000 WL 69110, at *1 (4th Cir. May 30, 2000) (table) ("The pleadings, affidavits, and other supporting documents presented to the court are construed in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor."). The court also finds that the focal point of the alleged tort, and the locus of its injury, was South Carolina. Accordingly, the court finds that Dash has made the requisite prima facie showing of minimum contacts, subject to being proved at trial.

  2.  Constitutional Reasonableness

Even where a defendant has purposefully established constitutionally significant contacts within the forum state, jurisdiction must also comport with notions of fair play and substantial justice. Int'l Shoe, 326 U.S. at 320. Factors bearing on this inquiry include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

First, the alleged financial resources of the Promoters do not appear to present any great burden to litigating in the South Carolina, and the Promoters have made no showing

as to how litigating in this forum would be "gravely difficulty" such that it would be placed at a "severe disadvantage in comparison to [their] opponent." CFA Institute v. Institute of Chartered Financial Analysts of India, 551 F.3d 285, 296 (4th Cir. 2009). The court notes that the Promoters were able to secure counsel from a large national law firm to represent its interests. See id. Furthermore, the court notes that the "inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there," as is the case when a defendant enters the state to infringe another's intellectual property. Id. (citing Indianapolis Colts, 34 F.3d at 412).

As to prong two, South Carolina has an interest in protecting its citizen's rights, especially from intentional torts committed by out-of-state actors. Third, Dash has a keen interest in obtaining relief in his home state, as opposed to Florida or Nevada. He also has a valid and substantial interest in protecting what property he has from being infringed and is entitled to use the judicial system in South Carolina to protect the same. Id. at 297. Accordingly, the court finds that Dash has made a prima facie showing that exercising jurisdiction would be constitutionally reasonable under the factors set forth above.

B.  The Promoters' Motion to Transfer Venue

The Promoters have moved, in the alternative, to transfer venue to Nevada. In considering whether to exercise its discretion to transfer an action, see 28 U.S.C. § 1404(a), district courts evaluate several factors: (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the

witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice. See, e.g., Landers v. Dawson Const. Plant, Ltd., Nos. 98-2709, 98-2763, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999); Selective Ins. Co. v. Schremmer, 465 F. Supp. 2d 524 (D.S.C. 2006). The Promoters argue that because much of the proof in this case will be driven by witness testimony and because four of the five defendants, and their records, are located in Nevada, the ease of access to sources of proof and the convenience of the defendants and witnesses weighs heavily in favor of transferring venue to Nevada. Dash contends that he and his witnesses are located in South Carolina, as well as the equipment he used to compose TONY GUNZ BEAT. He also argues that the interest of having injury to South Carolina intellectual property vindicated in South Carolina and the disparity in resources between the parties weighs in favor of venue remaining in South Carolina. The court agrees with Dash. His choice of forum is entitled to "significant weight," South Carolina has a substantial interest in vindicating its citizens' rights as against foreign tortfeasors, and the ease of access to sources of proof does not favor either side. Accordingly, the court declines to exercise its discretion to transfer the action to Nevada.

    C.    WWE's Motion to Dismiss

WWE argues that Dash cannot establish either specific or general personal jurisdiction over it in the District of South Carolina. At the hearing on this motion, Dash explicitly abandoned any theory of personal jurisdiction over WWE based on Calder v. Jones and its

progeny. Accordingly, this court will assess personal jurisdiction under the traditional frameworks.

WWE contends that Dash cannot establish specific jurisdiction in South Carolina for any copyright infringement that may have occurred through (1) the use of Yep at the Florida or Nevada events; (2) the national and global broadcasts of those events, through the sale of pay-per-view content or otherwise; or (3) the sale of DVDs throughout the Untied States and the world. Dash contends that either (2) or (3), or both, of the above should suffice to establish specific personal jurisdiction. The relevant standard is detailed above and will not be repeated in full here. See supra Part III. To establish specific jurisdiction, Dash must show (1) purposeful availment; (2) injury arising form such availment; and (3) constitutional reasonableness.

To establish minimum contacts, Dash must first show that WWE purposefully availed itself of the privileges and protections of South Carolina. Factors to consider in purposeful availment include: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the

parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. See Geometric, 561 F.3d at 278. Dash argues that WWE purposefully availed itself of the privilege of doing business in South Carolina when it entered into pay-per-view contracts with, and sold DVDs of Wrestlemania 24 to, forum residents.

Problematically, Dash fails to adequately allege that it was WWE that entered into such pay-per-view contracts or meet WWE general counsel James Langham's affidavit indicating that distribution of pay-per-view content is accomplished through third-party cable and satellite providers. Further, the complaint fails to allege that WWE actually sold the infringing DVDs. Because the complaint fails to properly allege and support contracts between WWE and forum residents, the court finds that such conduct cannot support personal jurisdiction. Accordingly, the first question before the court is whether a Delaware corporation headquartered in Stamford, Connecticut, subjected itself to personal jurisdiction in South Carolina by causing a Florida event containing allegedly infringing content to be broadcast globally, including in South Carolina. The court finds that it does not. See, e.g., Annie Oakley Enterprises, Inc. v. Sunset Tan Corporate & Consulting, LLC, No. 1:09-cv-72-JVB, __F. Supp. 2d__, 2010 WL 1257466, at *11 (N.D. Ind. March 25, 2010) (collecting cases that found, as a matter of law, that national television broadcasts cannot support specific jurisdiction). The Fourth Circuit has made "clear that technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." ALS

Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707 (4th Cir. 2002). To do what Dash proposes would accomplish exactly that.

Dash also contends that the sale of DVDs of WrestleMania 24 in retail outlets in South Carolina constitutes sufficient minimum contacts. Dash, in effect, advocates the application of a stream of commerce approach to determining purposeful availment. See Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102 (1986). Badly splintered Supreme Court decisions have cast some fog over the correct standard for evaluating such an argument. However, several points are clear from the caselaw. The fact that an item or good is sold in a forum, and that it was foreseeable that such a sale would occur, is not and has never been a sufficient benchmark for personal jurisdiction. Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989). "If it were, a 'seller of chattels would in effect appoint the chattel his agent for service of process' and his 'amenability to suit would travel with the chattel.'" Id. (quoting World-Wide Volkswagen, 444 U.S. at 295). What matters is "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. (quoting World-Wide Volkswagen, 444 U.S. at 297. The Supreme Court has found such circumstances to exist when "a corporation . . . delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum." World-Wide Volkswagen, 444 U.S. at 297–98.

Here, WWE's DVDs of WrestleMania 24 did not randomly and fortuitously find their way on to the shelves of South Carolina retail establishments. (Am. Compl. 13, ECF No. 7.) WWE is "an integrated media company," registered to do business in South Carolina, and caused its DVDs to be sold through many of the largest retailers in the country, each with many locations in South Carolina. On these facts, WWE cannot deny that it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in [South Carolina]." Lake Shore, 886 F.2d at 658 (quoting World-Wide Volkswagen, 444 U.S. at 297–98.) Accordingly, as the injury to the intellectual property occurred when the infringing content was sold in South Carolina, see Beverly Hills Fan Co., 21 F.3d at 1570, the requirement that the action arise out of the WWE's activity in the forum is satisfied. The court also finds that it would be reasonable for the court to exercise jurisdiction over WWE for the reasons stated in Part IV.A.2 above, as they are equally applicable to WWE.

The court finds that Dash has made a prima facie case of personal jurisdiction over WWE because WWE purposefully availed itself of the privileges and protections of South Carolina through introducing items in to the stream of commerce with the expectation of sales in South Carolina. The court also finds that the injury arose from such contacts, and that it would be constitutionally reasonable for this court to exercise jurisdiction over WWE. However, as Dash has only established a prima facie showing of personal jurisdiction, he must still come forward at trial with proof of specific personal jurisdiction. WWE's motion

to dismiss is hereby denied. As the court finds specific personal jurisdiction over WWE proper, it need not address the question of general jurisdiction.

IV. Conclusion

Because the court finds that Dash has made a prima facie showing of specific personal jurisdiction as to the Promoters, and because the factors considered in assessing a motion to transfer venue do not strongly favor the Promoters, the court hereby denies the Promoters' motion to dismiss, or, in the alternative, transfer venue (ECF No. 22). Also, because the court finds WWE introduced DVDs of WrestleMania 24 in to the stream of commerce with the expectation that they would be sold in South Carolina, because the DVDs caused injury in South Carolina, and because exercise of jurisdiction over WWE would be constitutionally reasonable, the court denies WWE's motion to dismiss for lack of personal jurisdiction (ECF No. 24). Dash now has until October 25, 2010, to serve all unserved parties.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

August 25, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge