IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Anthony Lawrence Dash, | ) |
| | ) C/A No.: 3:10-cv-1036-JFA |
| Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| Floyd Mayweather, Jr., an individual; Mayweather Promotions; Mayweather Promotions, LLC; Philthy Rich Records, Inc.; and World Wrestling Entertainment, Inc. | ) |
| Defendants. | ) |

This matter comes before the court pursuant to the plaintiff's motion for sanctions (ECF No. 112). The parties have fully briefed this matter, and after hearing oral argument from the parties, the court has determined that sanctions are appropriate. For the reasons stated herein, the court hereby grants plaintiff's motion for sanctions in part and directs the individual defendant, Floyd Mayweather, Jr., to perform 40 hours of community service at the Las Vegas Habitat for Humanity Project. The court directs Mr. Mayweather to perform the community service personally by January 31st, 2012.

**I.     FACTUAL AND PROCEDURAL HISTORY**

This case involves an alleged copyright infringement. Plaintiff, a South Carolina resident, filed the present action against Floyd Mayweather, Jr., his affiliated production and promotional entities, and World Wrestling Entertainment, Inc. Plaintiff alleges that he created a beat called the Tony Gunz beat (TGB) in 2005. The plaintiff alleges that

1

Mayweather unlawfully used plaintiff's copyrighted music during his entrance into the arena at two WWE events where Mayweather appeared. Mr. Mayweather is a professional boxer, but he appeared as a guest at two World Wrestling Entertaiment, Inc., events—Wrestlemania 24 held on March 30, 2008 and the August 24th, 2009 RAW program. As part of his entrance into the ring at the two events, Mayweather played a song called "YEP." Cory Harris, manager of Philthy Rich Records, testified that he created the beat to YEP sometime around 2007. (Harris Dep., 23:3–24:18, 56:4–57:25, May 26, 2011, ECF 90-3.) Plaintiff alleges that Mayweather's song "YEP" infringed on his copyright in TGB.

Plaintiff commenced this action in April 2010 alleging copyright infringement under 17 U.S.C. § 101, and the parties are currently engaged in discovery. The plaintiff's motion arises from Mayweather's conduct during discovery and, in particular, his representations about his availability for his deposition.

Following attempts to pick a date suitable to both parties, Plaintiff noticed Mayweather's deposition for July 11, 2011. Mayweather filed an emergency motion for protective order (ECF No. 80) seeking to reschedule the deposition until after a boxing match scheduled for September 17th, 2011. Mayweather argued that the deposition would interfere with his training and promotional activities leading up to the fight. The court held a phone conference with the parties and directed that Mayweather's deposition was "to be scheduled no later than 2 weeks after [the] fight" (ECF No. 83). The deposition was rescheduled for September 29th, 2011.

On September 26th, 2011, Mayweather notified the plaintiff by letter that he would not be available for the scheduled deposition. Plaintiff contacted the court and requested a conference. The court conducted a telephonic conference with counsel for the parties on September 27th, at 2:45 p.m. EST. Mayweather's attorney, Mark Tratos, informed the court that Mayweather had suffered numerous injuries from the fight and was recovering. He based these statements upon a doctor's note from Robert O. Voy, M.D. that outlined Mayweather's health problems. Voy recommended that Mayweather "not be subjected to mental stress, sparring, or training, pending MRI results and until the headaches have completely resolved." (Pl.'s Supplemental Mem. Supp. Mot. Sanctions, Ex. 1, ECF No. 116.) The court expressed its concern that such notes are often easily obtained as a matter of course and that Mayweather may be using the note as an excuse to escape his obligations to the court. Moreover, the court specifically asked Mr. Tratos whether Mayweather was resting or out partying. Tratos informed the court that Mayweather was recovering from the fight and resting. As a result, the court granted an extension and directed that Mayweather's deposition should be taken no later than October 27th, 2011 (ECF No. 110). Because plaintiff's counsel would have to reschedule travel accommodations as a result of the last minute rescheduling, the court directed that the defendant would have to pay their costs associated with the postponement.

On September 30th plaintiff filed the present motion for sanctions. The plaintiff's later submitted a supplemental memorandum (ECF No. 116) in support of that motion. Plaintiff sought sanctions against the individual defendant Floyd Mayweather, Jr., alleging that Mayweather misrepresented the reasons for the postponement. Plaintiff's

3

submitted video evidence that Mayweather appeared at the Echelon 3000 Club outside Atlanta, Georgia on the night of September 29th, 2011—the date of the deposition prior to the postponement. Mayweather appeared at another Atlanta area nightclub, the Ritz, the following day. His appearance at this event was advertised on September 26th. While Mayweather's mangers represent that Mayweather did not dance at the clubs, he can be seen alternatively throwing money into the crowd and burning U.S. currency. These appearances occurred just days after the court postponed his deposition for health reasons.

## II.  LEGAL STANDARD

Federal Rules of Civil Procedure 11 and 37 as well as 28 U.S.C. § 1927 provide federal courts with the power to issue sanctions. In addition to these provisions, "[d]ue to the very nature of the court as an institution," the court has the inherent power to issue sanctions "to impose order, respect, decorum, silence, and compliance with lawful mandates." *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 461 (4th Cir. 1993). This inherent power "is necessary to the exercise of all other powers" of the court. *Id.*

Because it is not subject to regulation by Congress or the people, this inherent power "must be exercised with the greatest restraint and caution." *Id.* at 461. Moreover, a court must also comply with due process when exercising this power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Where the rules provide adequate sanctions, a court should rely on them, but when, "in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50. Thus, a "court may invoke its inherent power in conjunction with, or instead of, other

sanctioning provision." *In re Weiss*, 11 F.3d 1159, 1171 (4th Cir. 1997) (citing *Chambers*, 501 U.S. at 46–50).

"A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45. A court must find bad-faith on the part of the person to be sanctioned before exercising its inherent power. *See Chambers*, 501 U.S. at 45–46. Under its inherent power, "a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." *Shaffer*, 11 F.3d at 462. "Since orders dismissing actions are the most severe, such orders must be entered with the greatest caution." *Id.* In the context of an award of attorney's fees, the Supreme Court has found that bad faith exists where "a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,'" *Chambers*, 501 U.S. at 46 (quoting *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)), or where a party "delay[s] or disrupt[s] the litigation or hampers a court order's enforcement," *id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)).

Accordingly, a court may exercise its inherent power "not merely to remedy prejudice to a party, but also to reprimand the offender and 'to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (citing *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir.2003)).

5

### III.     DISCUSSION

The court is unconvinced by Mayweather's attempts to justify his actions and finds that his conduct warrants sanctions.  Mayweather's appearance at a nightclub on the day he was supposed to be deposed contradicts his stated reasons for rescheduling that deposition. On September 27th, Mayweather learned that his deposition had been postponed and that he obtained clearance from the doctor.  Mayweather argues that he did not confirm his appearance at either of the events until this time.  Mayweather, however, sought and obtained a postponement from this court on the grounds that he was recovering from the fight and experiencing ongoing health problems.  The court was not told that Mayweather was simply waiting on clearance from a doctor following an MRI scan.  Moreover, when Mayweather did obtain clearance from the doctor, he did not notify the court of the change in circumstances.

This court finds that Mayweather's actions constitute bad faith.  When the court granted the postponement, it sought and obtained verification from Mayweather's counsel that Mayweather was resting and not out partying.  Within days the court was aware that this was not the case and that Mayweather was indeed partying. Mayweather misrepresented to the court the nature and severity of his injuries, thereby obtaining a postponement of his deposition.  He has therefore committed a fraud upon this court. Moreover, Mayweather avoided taking his deposition—which had already been rescheduled from the summer to accommodate his schedule—for yet another month. Courts have found that parties engaging in such delay tactics act in bad faith. *See, e.g.*, *Hutto*, 437 U.S. at 698 n.14 (collecting cases).

The court is also aware that Mayweather has been sanctioned in another case for failing to appear at a deposition. (Pl.'s Reply Supp. Mot. Sanctions, Ex. 1, ECF No. 129.)  This court, however, bases its decision on Mayweather's conduct in the present case.  The court finds that his actions in this case justify sanctions and that such sanctions are necessary to deter Mayweather or similarly situated parties from "trampling upon the integrity of the court." *Salmeron*, 579 F.3d at 797 (citing *Dotson*, 321 F.3d at 668).

Cognizant of its duty to afford due process, the court advised Mayweather that he had a right to appear and be heard in person at the hearing (ECF No. 110).  Tratos, Mayweather's counsel, indicated that he had informed his client of that right, but Mayweather did not appear at the hearing the court held on November 4, 2011.  In addition, Tratos informs the court that during the telephonic hearing on September 27th, he was not aware that Dr. Voy had reviewed the MRI results and cleared Mayweather to conduct activities as normal.  Therefore, Mr. Tratos relayed to the court the facts as they were presented to him, and the court does not find that sanctions against Mr. Tratos are warranted.  As discussed above, the court finds that Mayweather's actions constitute bad faith and finds that Mayweather has not accorded this court the proper respect.

The court also takes notice that Mayweather is a wealthy individual.  Plaintiff's counsel informed the court that Mayweather could not provide an amount when asked how much he earned from his most recent fight.  At the parties in question, Mayweather can be seen burning money, allegedly one-hundred dollar bills, while in another video he throws money into the crowd.  Mayweather often advertises himself using the moniker "Money Mayweather" and his production company is Philthy Rich Records.  Suffice it to

7

say that Mayweather has substantial personal wealth. In order to have a deterrent effect, any monetary sanction would also have to be substantial.[1] This court declines to conduct extensive hearings to determine Mayweather's wealth in an effort to arrive at an appropriate monetary sanction. Rather than expend the resources of the court and the parties in that manner, the court finds that sanctioning Mayweather in another fashion is necessary.

Accordingly, this court finds that the sanctions outlined in the rules and statutes are not "up to the task" in the present case and the court turns instead to its inherent authority. *Chambers*, 501 U.S. at 50. Pursuant to that authority, the court directs the individual defendant Floyd Mayweather, Jr., to perform community service. The court finds that such sanctions are necessary to deter Mayweather from similar conduct in the future and to preserve the "order, respect, decorum, silence, and compliance" that should be afforded to proceedings before this court. *Shaffer*, 11 F.3d at 461.

Therefore, the court directs Mayweather to perform 40 hours of community service at the Las Vegas Habitat for Humanity Project by January 31st, 2012. Mayweather shall immediately contact Chakoya Sims (telephone (702) 638-6477) to arrange a schedule for compliance with this order. A copy of this order shall be forwarded by the clerk to Ms. Sims. Ms. Sims shall advise the court when Mr. Mayweather has fulfilled his obligations under this order.

---

[1] Mayweather would also have little difficulty paying plaintiff's costs, and in fact, the court has already assessed some costs to Mayweather (ECF No. 110).

IT IS SO ORDERED.

November 7, 2011
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge