IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Anthony Lawrence Dash, ) | |
| ) | C/A No.: 3:10-cv-1036-JFA |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Floyd Mayweather, Jr., an individual; ) | |
| Mayweather Promotions; Mayweather ) | |
| Promotions, LLC; Philthy Rich Records, ) | |
| Inc.; and World Wrestling ) | |
| Entertainment, Inc., ) | |
| Defendants. ) | |
| ) | |

This matter comes before the court pursuant to Defendants' motion for summary judgment (ECF Nos. 143 & 145). The court held a hearing on this matter on May 9, 2012. After considering the written materials submitted and the arguments of counsel, the court grants Defendants' motions for summary judgment.

### I.    FACTUAL AND PROCEDURAL HISTORY

This case arises from the appearance of Floyd Mayweather, Jr., a professional boxer, at two World Wrestling Entertainment (WWE) events. Mayweather appeared at Wrestlemania XXIV on March 30, 2008, and at the August 24, 2009, weekly episode of WWE's RAW program. During his entrance at the two events, Mayweather played the "Yep" song. Plaintiff Anthony Dash alleges that "Yep" infringes a copyright he holds in his beat, the Tony Gunz Beat (TGB beat). For the purpose of the damages issues

1

presently before the court, the parties are assuming that Plaintiff had a valid copyright in the TGB beat.

For the purposes of this motion, the parties have stipulated to the key facts. WWE has disclosed the amount of revenues it earned and identified the particular revenue streams from the events in question. (*See* ECF 137-1, an unredacted version of the stipulations is on file with the court.) Plaintiff has stipulated that he has no evidence to indicate that the playing of "Yep" at the two WWE events increased the revenue beyond the amount WWE would have earned without the song.

This motion is before the court pursuant to the court's Order Modifying Case Management Order (ECF No. 138). At a previous hearing, this court granted the Defendant's motion to bifurcate the trial, and held the various discovery motions in abeyance.[1] Following that hearing, the parties submitted a proposed order outlining the issues to be addressed as a part of the bifurcated proceedings. The court adopted that order, and accordingly, the first phase will address "the issue of Plaintiff's entitlement to actual damages and/or a profits based measure of damages pursuant to 17 U.S.C. § 504(b)."

## II.    LEGAL STANDARD

---

[1] Prior to the order bifurcating this case, the parties were embroiled in a contentious discovery dispute. Many of the disputes stemmed from discovery related to damages, which resulted in this court's decision to bifurcate the trial, and address the damages issue first. Therefore, the following motions are still pending: Defendant WWE's Motion to Compel Discovery, for a Preclusion Order on Actual Damages Claim, and for Modification of the Case Management Order (ECF No. 89), already granted in part; Defendant WWE's Motion for a Protective Order (ECF No. 95); Plaintiff's Motion for a Protective Order and to Quash a Subpoena (ECF No. 96); Plaintiff's Motion to Compel (ECF No. 100) and Defendant WWE's Motion for Extension of Time (ECF No. 125) and the Mayweather Defendant's corresponding joinder motion (ECF No. 126). Because this court has decided to grant summary judgment in favor of Defendants, those motions are hereby dismissed as moot.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted), and summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trs. of Md. Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III.  DISCUSSION**

Plaintiff's monetary damages claim rests on two grounds:  profits of the infringer and actual damages.[2]

    *a. Profits of the Infringer*

---

[2] In his complaint, Plaintiff sought injunctive relief as well as monetary damages. Counsel for Defendant Mayweather indicated to this court that he did not plan to use the song again. In any event, the plaintiff has now registered his copyright, and should defendant use the song again, the question presented would be in a different posture than the issue presently before this court. Accordingly, the court finds it necessary to address only the damages issues properly before it.

3

Plaintiff claims entitlement to Defendants' profits as a measure of his damages pursuant to 17 U.S.C. § 504(b), which provides as follows:

> (b) Actual Damages and Profits.--The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Section 504(b)'s burden shifting requirement provides an initial burden of proof for the copyright owner. The Fourth Circuit has noted that the "copyright holder must show more than the infringer's total gross revenue from all of its profit streams." *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005). The Fourth Circuit has interpreted the term "gross revenue" to refer only to revenue "reasonably related to the infringement." *Id.* (citations omitted). In *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) the Fourth Circuit analyzed § 504(b)'s burden shifting provision in the context of a summary judgment motion. The court concluded that summary judgment may be properly awarded to an infringer where there is "no conceivable connection between the infringement and the claimed revenues" or where the copyright holder can offer no "more than mere speculation." *Id.* at 520–22.

In *Bouchat*, the Baltimore Ravens used the plaintiff's shield design as part of the Flying B logo for the new team. In the damages portion,[3] the plaintiff claimed damages pursuant to § 504(b), arguing that "some portion of essentially *all* of the Defendants'

---

[3] In bifurcated proceedings, the jury first found that the defendant was liable for the infringement.

4

revenues was attributable to the infringing use of Bouchat's artwork." *Id.* at 517. The Fourth Circuit ultimately affirmed the trial court's decision to award summary judgment on the damages issue regarding the revenues derived from sources other than merchandise sales. Regarding the other revenues—such as minimum guarantee shortfalls and free merchandise—the court found that there was no conceivable connection to the design. The court determined that these revenues were independent of any connection to the logo because "neither figure could fluctuate in response to consumer behavior," and were "necessarily independent of any reaction that an individual might have had to the Flying B logo." *Id.* at 524. In other words, these were "revenues whose levels were fixed and immutable before licensees had an opportunity to [purchase the goods]" and, accordingly, not a proper measure of damages under § 504(b). *Id.* at 524.

In *Bonner v. Dawson*, 404 F.3d 290 (4th Cir. 2005), the Fourth Circuit reiterated its stance from *Bouchat*, but found that the revenues at issue did have a direct connection to the infringing work. In *Bonner*, an architect designed a building, and the client and builder later used the same design—without the architect's permission—for a second building. The revenues at issue were the profit streams derived from the building, such as lease agreements, and therefore were "not generated by outside sources, but by money collected from the use of the specific infringed work." *Id.* at 294. As a result, the Fourth Circuit determined that the architect met the initial burden under § 504(b).

Plaintiff's position is that "when profits are directly realized from the sale of an infringing product . . . , Plaintiff may recover without any further showing of a 'causal connection.'" (Pl.'s Opp. Def. Mot. Summ. J. 1, ECF No. 158.) Plaintiff asserts that the

5

distinction between direct and indirect profits is critical, and that Defendants improperly rely on indirect profits cases.  Plaintiff argues that once he has demonstrated an infringement, he need only show Defendant's gross revenue and then the burden shifts: any burden of demonstrating a causal connection is satisfied by merely showing that the Defendants' generated revenues through the direct sale of the infringing work.  Plaintiff argues that the damages in this case are direct and concludes that he has met his initial burden.  Plaintiff asks the court to deny the summary judgment motions and allow the case to move forward and place the burden on the Defendants to prove that the profit generated at the two events was attributable to factors other than the use of the infringing "Yep" work.

Plaintiff, however, fails to confront the Fourth Circuit cases directly, and rather, relies on several out of circuit decisions, asserting that the law is more developed in the copyright context outside of the Fourth Circuit.  In *Wood v. Houghton Mifflin Harcourt Publishing Co.*, 589 F. Supp. 2d 1230 (D. Colo. 2008), the copyright holder of a photograph sued a textbook publisher because the textbook used one of his photographs without authorization.  That court held that the photographer established the causal connection between the infringement and the profits by showing that the publisher profited from the publication of works containing the photograph.  The Plaintiff also relies on *Bergt v. McDougall Littell*, 661 F. Supp. 2d 916 (N.D. Ill. 2009), for the similar proposition that a painter need only show gross revenue from the sales of a textbook that made unauthorized use of his work.

6

The court finds that Plaintiff is not entitled to any of the Defendants' profits as a measure of damages. Critical to the resolution of this issue is the Plaintiff's stipulation that playing "Yep" did not increase the revenues of the Wrestlemania or RAW programs beyond what they would have otherwise garnered. Given this stipulation, Plaintiff fails to get past his initial § 504(b) burden as outlined in *Bouchat*. Plaintiff has failed to present any evidence demonstrating a causal link between the alleged infringement and the enhancement of a revenue stream at the WWE events in question. In such a case, where there is "no conceivable connection between the infringement and the claimed revenues," *Bouchat* demands that summary judgment must be granted in favor of the alleged infringer. *Bouchat*, 346 F.3d at 520.

While Plaintiff asserts that the damages in this case are direct, the court is not convinced that the damages in this case are in fact direct. Defendant did not directly sell the work, and as a result, the profits at issue here align more closely with cases involving indirect profits.[4] Plaintiff also argues that his case is analogous to *Bonner*, because both involve direct profits. In *Bonner*, however, the court noted that the revenues came from the buildings and that "no other source contributed to the generated funds." *Bonner*, 404 F.3d at 294. The same cannot be said for the revenues in this case, and in fact, Plaintiff has stipulated that the song did not increase the revenues at the two WWE events. In any

---

[4] Plaintiff relies heavily on two district court cases from outside the Fourth Circuit, *Bergt* and *Wood* discussed above, but both involve direct profits. Moreover, those two cases clearly apply the standard applicable in their respective circuit, not the burden required in the Fourth Circuit. *See, e.g.*, *Bergt*, 661 F. Supp. 2d at 927–28 ("Consequently, as the *Seventh Circuit* has required only a minimal showing of a causal nexus in a direct profit case to meet the plaintiff's § 504(b) burden, Bergt only need establish McDougal's gross revenue from sales of the textbook.") (emphasis added).

7

case, viewed either as indirect or direct damages, Plaintiff is not relieved of the causation burden, a burden that the court finds he has not met.

Plaintiff's policy argument fails to present a complete picture of the relief available under the Copyright Act. Plaintiff uses several examples to attempt to demonstrate that parties such as himself would be left without relief in the copyright scheme if the court follows Defendants' reasoning. As Defendants note, however, the Copyright Act does contemplate a situation such as this one. The Copyright Act encourages registration, which then allows copyright holders to seek statutory damages in situations such as the present one where the apportionment of damages under § 504(b) becomes complex or relief is unavailable. In this case, however, Plaintiff failed to register his copyright and is limited in the damages that he may seek—only actual damages and infringer's profits pursuant to § 504(b). Plaintiff's policy argument fails to discuss the role of statutory damages and therefore fails to present a full picture of the relief available under the Copyright Act.

### b. *Actual Damages (Plaintiff's Loss)*

Plaintiff also seeks an award of actual damages pursuant to 17 U.S.C. § 504(b). Actual damages under § 504(b) constitute the market value of TGB—the license fee that Plaintiff would have charged. *Hofmann v. O'Brien*, 367 F. App'x 439, 442 (4th Cir. 2010) (citing *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001). Traditional damage principles dictate that actual damages may not be based on "undue speculation." *Id.* (citing *On Davis*, 246 F.3d at 166).

Plaintiff argues that he is entitled to recover actual damages, and he relies on expert testimony comparing fees paid to other entertainers whose music was played at WWE events. Defendants argue that the actual value of TGB cannot be determined by looking at other entertainers because the focus is on the value of Plaintiff's work. In other words, Defendants argue that the market value of Plaintiff's beat bears no relationship to the market value of songs by famous recording artists such as Snoop Dogg and the Red Hot Chili Peppers. Defendants further support their position by noting that Plaintiff did not report any income from his songs on his tax returns and has not offered any other proof of sales of his beats. Defendants conclude that the TGB has no market value and, accordingly, that this court should grant summary judgment in its favor on both of the damages issues.

In this case, Plaintiff is not entitled to recover any actual damages. Plaintiff has only offered speculation as to the value of the song. Because the actual damages calculation focuses on Plaintiff's work, the amounts WWE paid to other entertainers, who are not similarly situated to Plaintiff, is irrelevant. *See Frank Music Corp. v. Metro-Goldwyn-Mayer*, 772 F.2d 505, 514 n.8 (9th Cir. 1985). Plaintiff relies only on speculation, while Defendants have offered evidence that indicates that Plaintiff's song did not have a market value. Accordingly, the court finds that the Plaintiff has not offered sufficient, concrete evidence to indicate an actual value of the beat, and he cannot survive summary judgment on the actual damages claim.

## IV.  CONCLUSION

Earlier in this case, the court sanctioned the individual defendant, Floyd Mayweather, Jr., as a result of his conduct during discovery.  Pursuant to the Declaration recently filed with this court outlining Mr. Mayweather's charitable activities (ECF No. 170), the court finds that he has complied with the sanctions as ordered by this court, and that matter is now resolved.

For the reasons stated above, the court grants the Defendants' motions for summary judgment on the damages issues.  Because the court finds that the Plaintiff is not entitled to any damages, the case will not proceed to the liability phase, and the pending discovery motions are hereby dismissed as moot.  The clerk is instructed to close the case.

IT IS SO ORDERED.

May 11, 2012                                                         Joseph F. Anderson, Jr.
Columbia, South Carolina                                     United States District Judge